743 A.2d 422 (1999)
In the Interest of D.M.
Appeal of D.M.
Supreme Court of Pennsylvania.
Argued February 3, 1999.
Decided December 27, 1999.
*423 John W. Packel, L. Roy Zipris, for D.M.
Catherine Marshall, Ronald Eisenberg, for Com.
Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*424 OPINION

CAPPY, Justice.
The sole issue presented in the instant appeal is whether the police officer demonstrated the requisite cause to stop appellant pursuant to the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. For the reasons stated herein, we determine that the officer did not possess the requisite cause to stop appellant, and accordingly, reverse the court below.
As the issue before us arises from the ruling of the suppression court, our standard of review is limited. When reviewing rulings of a suppression court, we must determine whether the record supports that court's findings of fact. Commonwealth v. Cortez, 507 Pa. 529, 491 A.2d 111 (1985). Where the defendant has appealed, we consider the evidence presented by the prosecution and only that evidence from the defense that is uncontradicted. Id. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. Id.
The facts, presented at the suppression hearing, established the following. On June 24, 1996, at approximately 6:00 p.m., Officer Chris Frazier received a radio call regarding a man with a gun at 28th and Cecil B. Moore Avenues in Philadelphia. The officer was only one block from the location at the time of the call. The radio call included a description of the "man with a gun" as a black male, wearing a white t-shirt, blue jeans and white sneakers.
Upon arriving at the scene, the officer saw appellant, D.M., who matched the description given by the radio call.[1] Officer Frazier exited his vehicle and told appellant to come over. Appellant ran away from the officer. Police back up approached the scene and appellant was stopped between the two cars. Officer Frazier asked appellant to put his hands on the hood of the car in front of him and proceeded to pat appellant down for the officer's own protection. Officer Frazier felt a hard object resembling a handgun in appellant's crotch area. A .32 caliber handgun fell out of appellant's right pants leg. At that point, Officer Frazier secured the gun and arrested appellant.
Appellant filed a motion to suppress alleging violations of both the United States and Pennsylvania Constitutions. Following a hearing, the trial court denied appellant's motion to suppress. That same day, the court adjudicated appellant delinquent and placed him on Intensive Probation. The Superior Court affirmed in a memorandum opinion. This court granted the petition for allowance of appeal in order to address the issue of whether the officer possessed reasonable suspicion to stop appellant based on an anonymous tip, where appellant fled at the time he was approached by the officer.[2]
Appellant argues that the officer did not establish reasonable suspicion based upon Article 1, Section 8 of the Pennsylvania Constitution. Specifically, appellant asserts that anonymous tips that lack specificity carry no indicia of reliability, and therefore cannot be used in establishing reasonable suspicion. The Commonwealth responds that the anonymous tip was sufficiently specific in the description and location of appellant. Thus, when examined in their totality, the facts in the instant case, including the tip and appellant's subsequent flight, demonstrate reasonable suspicion.
*425 Both the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. Commonwealth v. Jackson, 548 Pa. 484, 698 A.2d 571, 573 (1997). In the seminal case on reasonable suspicion, the United States Supreme Court determined that in order to stop a defendant the officer must demonstrate that he had a reasonable suspicion that criminal activity was afoot. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[T]he police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience." Commonwealth v. Cook, 558 Pa. 50, 735 A.2d 673, 677 (1999); Jackson, 698 A.2d at 573; Terry, 392 U.S. at 27, 88 S.Ct. 1868. In determining whether reasonable suspicion exists for a Terry stop, the inquiry is the same under either Article 1, Section 8 of the Pennsylvania Constitution or the Fourth Amendment of the United States Constitution. Cook, 735 A.2d at 675; Jackson, 698 A.2d at 573.
In Jackson, this court recently considered almost identical facts to those involved in the instant case, and concluded that the officers did not possess reasonable suspicion to justify a stop of appellant. Jackson, 698 A.2d at 573. However, the Commonwealth insists that the anonymous tip in the instant case was more specific than the tip in Jackson.
In Jackson, the police officer received a radio report of a man in a green jacket with a gun. The officer was also provided with a location. The officer responded to the report and upon arriving at the specified location, saw a group of people in which appellant was the only person wearing a green jacket. The officer exited his vehicle and immediately searched appellant.
In rejecting the Commonwealth's contention that the officer possessed a reasonable suspicion that criminal activity was afoot, this court explained that anonymous tips should be treated with particular suspicion. Jackson, 698 A.2d at 573. In order to be considered reliable the anonymous tip must supply specific facts, which are sufficiently corroborated by the officer. Jackson, 698 A.2d at 574. Facts that may be utilized in determining reasonable suspicion should indicate a particularized knowledge, and should not be those facts available to the general public. Jackson; see also Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)(facts which predict a defendant's future behavior make anonymous tip more reliable). "The fact that a suspect resembles the anonymous caller's description does not corroborate allegations of criminal conduct, for anyone can describe a person who is standing in a particular location at the time of the anonymous call. Something more is needed to corroborate the caller's allegation of criminal conduct." Jackson, 698 A.2d at 574-5; quoting Hawkins, 692 A.2d at 1070. Based upon the above, the court concluded that the mere physical description and location of appellant were insufficient to satisfy the reasonable suspicion requirement. Jackson, 698 A.2d at 575.
We are not persuaded by any attempts to distinguish the radio report in the instant case from the one in Jackson. We do not see how the "additional" facts of the race of the appellant and a full clothing description of the appellant imparted more reliability to the instant tip. Akin to the tip in Jackson, there was nothing in this tip to indicate that the person providing the tip had any particularized knowledge about appellant. As we stressed in Jackson, anyone can describe a person who is standing in a particular location at the time of the anonymous call. In that instance, the tip must provide something more. Here, the tip provided nothing more than a physical description and location of the appellant, the equivalent to the tip in Jackson. Officer Frazier did not testify that appellant was acting suspiciously at the time he arrived on the scene. *426 He also did not make any observations that would insinuate that criminal activity was afoot. In fact, the evidence merely suggests that appellant was "hanging out" when Officer Frazier reached the scene. Accordingly, there was nothing in the instant anonymous tip or the circumstances surrounding the tip that provided the officers with a reasonable suspicion that criminal activity was afoot.[3]
However, our inquiry does not end here, because the Commonwealth asserts that appellant's subsequent flight furnished the police officers with a reasonable suspicion to stop appellant. In Commonwealth v. Cook, supra, this court recently explained the relevancy of an appellant's subsequent flight in determining reasonable suspicion. Although ultimately, in Cook, this court did not suppress the contraband, the analysis regarding flight is instructive for purposes of the instant case.
In Cook, this court made clear that flight alone does not establish reasonable suspicion. 735 A.2d at 677. However, flight along with other facts, may demonstrate a reasonable suspicion that criminal activity is afoot. Id. In making the determination that reasonable suspicion existed, we relied upon the fact that the officer made firsthand observations of suspicious conduct, which based upon his experience, indicated that criminal activity was afoot, before he even approached appellant. Id. Moreover, we explained that flight could be considered in establishing reasonable suspicion, since the officer's suspicions were already aroused at the time appellant fled. Id. at 677-78. Accordingly, Cook makes clear that the appellant's subsequent flight becomes a relevant factor, in determining reasonable suspicion, only when the officer's suspicions are already aroused.
In the instant case, the officer's suspicions were not aroused at the time he initially approached appellant. As indicated previously, the tip and existing circumstances when Officer Frazier arrived at the scene failed to provide any facts that would lead an officer to reasonably suspect that criminal activity was afoot. In the absence of any factors indicating that the officer suspected criminal activity was afoot, the "additional" factor of flight is not relevant to the determination of reasonable suspicion.
Accordingly, for the reasons stated herein, we reverse the Superior Court and grant appellant's motion to suppress the contraband.
Justice CASTILLE files a dissenting opinion joined by Justice NEWMAN.
Justice SAYLOR files a dissenting opinion.
CASTILLE, Justice, dissenting.
For the reasons expressed in Madame Justice Newman's Dissenting Opinions in Commonwealth v. Hawkins, 547 Pa. 652, 692 A.2d 1068 (1997), and Commonwealth v. Kue, 547 Pa. 668, 692 A.2d 1076 (1997), I believe that the police officer in the instant matter was justified in initiating an investigative stop of appellant. Consequently, I would affirm the Superior Court's determination that the investigative stop herein *427 satisfies the requirements of the United States and Pennsylvania Constitutions.
The majority correctly acknowledges that the standard for determining whether reasonable suspicion exists for a protective frisk is the same under both Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution. Commonwealth v. Cook, 558 Pa. 50, 735 A.2d 673 (1999); Commonwealth v. Jackson, 548 Pa. 484, 698 A.2d 571 (1997). Nevertheless, the majority's interpretation of the corroboration requirements for an anonymous tip of a "suspect with a gun" continues to diverge from the interpretation of federal courts. See, e.g., United States v. DeBerry, 76 F.3d 884 (7th Cir.1996)(anonymous tip that armed man dressed in tan shorts and shirt at certain location and "ambiguous gesture" justified frisking suspect); United States v. Gibson, 64 F.3d 617 (11th Cir.1995), cert. denied, 517 U.S. 1173, 116 S.Ct. 1580, 134 L.Ed.2d 678 (1996)(anonymous tip of armed man wearing long black trench coat at specific location and suspect reaching behind him justified frisking suspect); United States v. Bold, 19 F.3d 99 (2d Cir.1994)(anonymous tip of armed man in gray Cadillac at specific location justified frisking suspect); United States v. Clipper, 973 F.2d 944 (D.C.Cir.1992), cert. denied, 506 U.S. 1070, 113 S.Ct. 1025, 122 L.Ed.2d 171 (1993)(anonymous tip that armed man wearing green and blue jacket and black hat at a specific location justified frisking suspect); United States v. McClinnhan, 660 F.2d 500 (D.C.Cir.1981) (anonymous tip of armed man in black hat holding briefcase at specific location justified frisking suspect).
The majority asserts that Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), always requires predictive information to support a finding of reasonable suspicion based on an anonymous tip. To the contrary, Alabama v. White, did not create a "categorical rule conditioning a Terry stop ... on the corroboration of predictive information." Clipper, supra at 949. In United States v. Roberson, 90 F.3d 75 (3d Cir.1996), in which there was an anonymous tip of a man selling narcotics, the United States Court of Appeals for the Third Circuit noted in dicta that predictive information may not be required to conduct a protective frisk based on an anonymous tip of a "suspect with gun." The Third Circuit cited Clipper, supra, for the proposition that the police have the requisite reasonable suspicion to conduct a protective frisk when an anonymous tip involves: (1) the report of a suspect with a gun, (2) a description of the suspect, and (3) the suspect's location. The court in Clipper reasoned that:
[The] element of imminent danger distinguishes a gun tip from one involving possession of drugs. If there is any doubt about the reliability of an anonymous tip in the latter case, the police can limit their response to surveillance or engage in `controlled buys.' Where guns are involved, however, there is the risk that an attempt to `wait out' the suspect might have fatal consequences.
Clipper, supra at 951.
The simple rationale for the Clipper standard is to provide police with the tools to decrease the deadly risk when confronting suspects who may be armed with firearms. A protective frisk "allow[s] the officer to pursue his investigation without fear of violence...." Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). A police officer is "required to act swiftly to apprehend an individual reported to be in possession of a gun ... and [is] a potential threat to the safety of the officer and other persons in the area." Commonwealth v. Lagana, 517 Pa. 371, 377, 537 A.2d 1351, 1354 (1988). This Court should properly balance the privacy interests of a citizen of this Commonwealth with the risk encountered by police officers entrusted with the protection of society and their own personal safety. A proper balance is found when this Court acknowledges that an anonymous tip concerning a *428 suspect with a gun requires less corroboration given the risk of a police encounter with a potentially armed suspect.
Therefore, I believe that the facts of the instant matter under the standard set forth in Clipper support a finding that the officer had reasonable suspicion to conduct a protective frisk for weapons. The majority's holding here greatly enhances the possible infliction of death or serious injury to those in whom society chooses to enforce the public safety, the police, and concomitantly increases the danger to all members of society by greatly decreasing the ability of the police to remove illegally carried firearms from our public streets.
Justice NEWMAN joins this dissenting opinion.
SAYLOR, Justice, dissenting.
As the majority notes, this Court's precedent establishes that an anonymous report of an armed individual on a public street is not, in and of itself, sufficient to support an investigatory detention/protective frisk, Commonwealth v. Jackson, 548 Pa. 484, 493, 698 A.2d 571, 575 (1997), nor is an individual's flight from an approaching police officer alone sufficient for such purpose. See Commonwealth v. DeWitt, 530 Pa. 299, 308, 608 A.2d 1030, 1034 (1992). While the United States Supreme Court has granted certiorari in cases implicating both of these holdings,[1] at this juncture I therefore agree, in the present case, that neither the informer's tip nor D.M.'s flight independently constitutes a sufficient justification for the investigatory detention of D.M.
I differ with the majority, however, in the assessment of the totality of the circumstances presented. See generally United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (stating that "the essence [of the determination of reasonable suspicion] ... is that the totality of the circumstancesthe whole picturemust be taken into account"); In re D.M., 556 Pa. 160, 168, 727 A.2d 556, 559-60 (1999) (same). Here, in addition to identifying potentially dangerous behavior, the anonymous informer provided descriptive information about the subject in terms of race, attire and venue. Such information was corroborated by police observation upon immediate arrival at the designated location.[2] As the uniformed officer approached, D.M. fled to avoid the encounter. Thus, at this point, I believe that the circumstances had ripened into an objectively reasonable basis for suspicion.
The majority asserts that, as D.M. was approached, the officer's suspicions were not aroused, and therefore, D.M.'s subsequent flight merits no consideration in the totality of the circumstances. It is unclear to me, however, in what sense the majority *429 employs the word "suspicion" in this analysis. I believe that, prior to D.M.'s departure, based upon the partially corroborated tip, the officer did in fact "suspect" (in the subjective, common sense usage of that word) that the juvenile with whom he was confronted might possess a weapon and therefore be engaged in a criminal act. It is for that reason that the officer approached D.M. in the first instance; indeed, the officer would have been remiss in his responsibilities if he had not conducted some further investigation.
The majority's analysis appears to contemplate some intermediate degree of suspicionbetween that which would prompt further, limited police investigation (for example, a mere encounter) and the objectively reasonable degree necessary to justify an investigative detentionwhich must be present before flight will take on any legal significance in the totality of the circumstances. In my view, however, this form of analysis departs from the fundamental inquiry, namely, whether "the facts available to the officer at the moment of the search and seizure `warrant a man of reasonable caution in the belief' that the action taken was appropriate," Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) (citations omitted), and creates the potential for confusion among police officers in the course of day-to-day encounters. Nor am I able to meaningfully distinguish the quantum of information that was available to the officers in Commonwealth v. Cook, 558 Pa. 50, 735 A.2d 673 (1999), a case in which the Court found that the defendant's flight from police did have significance in the totality of the circumstances, from that which was available here.[3]
Accordingly, I would hold that the circumstances present in this case formed an objectively reasonable basis for suspicion, thus justifying the investigatory detention.
NOTES
[1] Although there appears to be some dispute as to whether appellant was the only person present at the time Officer Frazier arrived on the scene, our scope of review is limited to considering only the evidence that is uncontradicted.
[2] Appellant did not contend that the frisk was improper in the courts below. Similarly, appellant does not contend that the frisk was improper to this court, thus the only issue we address is whether the stop was supported by reasonable suspicion.
[3] The dissent asserts that the corroboration requirements should be lessened where the suspect is alleged to be carrying a gun, given the risk that a suspected gun carrier poses to the police and in turn, society. Dissenting opinion at 429. Contrary to the insinuations of the dissenting opinion, we are mindful of the risks that police officers in this Commonwealth face on a daily, even hourly, basis. We are also cognizant of the widespread public violence that has erupted in our schools and streets, due in part to the accessibility to firearms. However, this court has steadfastly refused the temptation to step onto the slippery slope by recognizing a "gun exception" to the limitations placed upon search and seizures by both the Fourth Amendment and Article 1, § 8; and we continue to decline any invitations to recognize such an exception today. Jackson, 698 A.2d at 575 (quoting Hawkins, 692 A.2d at 1070 ("... there is no gun exception to the Terry requirement for reasonable suspicion of criminal activity....")).
[1] See Florida v. J.L., ___ U.S. ___, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999) (granting certiorari to review J.L. v. State, 727 So.2d 204 (Fla.1998), in which the Florida Supreme Court held that an anonymous tip providing only a description and location of a person possessing a firearm is insufficient to warrant an investigative detention); Illinois v. Wardlow, ___ U.S. ___, 119 S.Ct. 1573, 143 L.Ed.2d 669 (1999)(granting certiorari to review People v. Wardlow, 183 Ill.2d 306, 233 Ill.Dec. 634, 701 N.E.2d 484, 486 (1998), in which the Illinois Supreme Court held that a defendant's flight upon the approach of a police vehicle patrolling a high-crime area, alone, was insufficient to justify an investigatory stop).
[2] Since the tip lacked predictive information, it was not, by itself, adequate to justify an investigative detention. See Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). I do not read Alabama v. White, however, as foreclosing consideration of a non-predictive anonymous tip as a component of the totality of the circumstances in a case in which independent information (here, D.M.'s flight) is also present. See generally United States v. Roberson, 90 F.3d 75, 80 (3rd Cir.1996)(noting that the omission of predictive information from an anonymous tip would not necessarily have invalidated it as a consideration in the totality of the circumstances, if, after corroborating readily observable facts, police had also observed unusual or suspicious conduct on the suspect's part).
[3] I am also unable to meaningfully distinguish the decision in Commonwealth v. Lagana, 517 Pa. 371, 537 A.2d 1351 (1988), in which the Court concluded that a partially corroborated tip plus suspicious behavior in the form of the use of binoculars (giving rise to a suspicion that the defendant was "casing" a business establishment) formed a sufficient basis for objectively reasonable suspicion. In this regard, I note that the use of binoculars in this situation, and D.M.'s flight in the present case, would seem equally to be activities that would generate suspicion on the part of an investigating officer, but at the same time would carry some possibility of legitimate explanation.