Accordingly, we affirm the verdict and sentence.[7]

Justice NIGRO concurs in the result.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Melvin LYNCH, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 5, 2001.

Filed March 19, 2001.

7. Pursuant to Section 9711(i) of the Judicial Code, 42 Pa.C.S. § 9711(i), the Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania within 90 days.

Kathleen E. Martin, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, President Judge, CAVANAUGH, J., and FORD ELLIOTT, J.

CAVANAUGH, J.:

¶ 1 Should evidence be suppressed when, during a pursuit improperly initiated by a police officer, an appellant commits a crime and abandons evidence of that crime? We hold that it need not have been suppressed.

¶ 2 Melvin Lynch appeals the November 18, 1999, judgment of sentence imposing three to six years imprisonment, two years probation, and a fine following his conviction by a jury of carrying a firearm without a license, carrying a firearm in public, possessing an instrument of crime, possessing an offensive weapon, and simple assault.

¶ 3 On December 3, 1998, at about 10:45 p.m., Officers McBride and Ficchi of the Philadelphia Police Department received a radio call that a black male, with a dark complexion, "approximately five-eight in height, wearing a brown jacket with orange hoodie sweatshirt, orange hat, [and] blue jeans" on the corner of 13th and Webster Streets had a gun. The officers arrived on the scene in about two to three minutes and observed a group of men on the corner. Only appellant matched the description. Even though the officers were not in uniform, McBride displayed his badge as he exited the car. When the officers attempted to approach appellant for investigation, appellant ran from the officers. None of the others in the group fled. McBride chased appellant to an alley where appellant pulled a gun out of his waistband, displayed it, and turned toward the officer. Appellant proceeded to toss the gun and resume his flight. The officers apprehended appellant shortly thereafter. Subsequently, the officers returned to the alley and found the gun, a sawed-off .22 caliber revolver containing four live rounds. Appellant was not licensed to carry a gun.

¶ 4 Appellant was charged with aggravated assault, carrying a firearm without a license, carrying a firearm in public, possessing a firearm after prior conviction, possessing an instrument of crime, possessing an offensive weapon, simple assault, and recklessly endangering another person. The trial court heard appellant's motion to suppress on May 24, 1999. The court ruled that neither physical evidence of the gun nor testimony of its retrieval could be admitted. On June 22, 1999, after a motion to reconsider, the court partially reversed itself and allowed testimony regarding the recovery of the gun. On November 18, 1999, a jury found appellant guilty of carrying a firearm without a license, carrying a firearm on a public street or place, possessing an instrument of crime, possessing an offensive weapon, and simple assault. Appellant was sentenced the same day to three to six years imprisonment, two years probation, and the fine. Appellant raises one compound issue on appeal:

DID THE LOWER COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS AS THE POLICE OFFICERS DID NOT POSSESS PROBABLE CAUSE TO CHASE APPELLANT[,] AND IF SUCH CHASE CONSTITUTED A SEIZURE, SHOULD ANY EVIDENCE DISCARDED BY APPELLANT BE SUPPRESSED AS A RESULT OF THAT ILLEGAL SEIZURE?

■ ¶ 5 Our standard of review for the denial of a suppression motion is

whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing rulings of a suppression court we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Korenkiewicz*, 743 A.2d 958, 962 (Pa.Super.1999) (*en banc*), *appeal denied*, 563 Pa. 659, 759 A.2d 383 (2000) (quoting *Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492, 504–05 (1997)).

¶ 6 Appellant argues that the officers improperly chased appellant and that the pursuit constituted an illegal seizure. Appellant reasons that evidence of the abandoned gun should be suppressed as fruit of an illegal seizure. We will first address whether the officers properly pursued appellant when he fled. Since we find that

they improperly gave chase, we will also address whether the intervening gun incident established probable cause for the subsequently abandoned evidence.

■ ¶ 7 Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution afford protections against unreasonable searches and seizures. Among the protections is the requirement that an officer have reasonable suspicion before an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276, 280 (1969).

■ ¶ 8 Our supreme court has interpreted Article I, § 8 protection more broadly than the Fourth Amendment and has found that a seizure occurs when an officer gives chase. *Compare California v. Hodari D.*, 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), *with Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769, 776 (1996). Under Pennsylvania law, any items abandoned by an individual under pursuit are considered fruits of a seizure. *Matos*, 672 A.2d at 770. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop. *Id.* at 771.[1] Stated another way, when one "is unconstitutionally seized by the police, i.e. without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual." *Commonwealth v. Wimbush*, 561 Pa. 368, 750 A.2d 807, 810 n. 5 (2000).

1. Appellant fails to state the appropriate standard in framing his issue when he argues that the officers should have had probable cause at the time of the chase. They need only have had reasonable suspicion.

¶ 9 In deciding whether reasonable suspicion exists for an investigatory stop, our analysis is the same under both Article I, § 8 and the Fourth Amendment. *Commonwealth v. McClease,* 750 A.2d 320, 324 (Pa.Super.2000). *See also Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571, 573 (1997) (stating that "Pennsylvania has always followed *Terry* in stop and frisk cases").

> The fundamental inquiry is an objective one, namely, whether "the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

*Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153, 1156 (2000) (quoting *Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868) (citations omitted).

¶ 10 Among the factors to be considered in forming a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight. *Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903, 908 (2000) (noting that "nervous, evasive behavior such as flight is a pertinent factor in determining reasonable suspicion"); *Zhahir,* 751 A.2d at 1157 (stating that the expectation of criminal activity in a given area and nervous or evasive behavior are factors); *Commonwealth v. Albert,* 2001 PA Super 3, ¶ 13 (pointing to the reliability of an informant's tip as well as time and place as factors in determining reasonable suspicion); *Commonwealth v. Pizarro,* 723 A.2d 675, 680 (Pa.Super.1998) (finding that flight and presence in heavy drug-trafficking areas are factors).

¶ 11 While a tip can be a factor, an anonymous tip alone is insufficient as a basis for reasonable suspicion. *Wimbush,* 750 A.2d at 811; *Jackson,* 698 A.2d at 572. Such anonymous tips must be treated with particular suspicion. *Jackson,* 698 A.2d at 573. Likewise, presence in a high crime area alone or flight alone does not form the basis for reasonable suspicion. *Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673, 677 (1999). However, a combination of these factors may be sufficient. *See Zhahir,* 751 A.2d at 1157 (noting that suspicious conduct corroborates an anonymous tip); *Cook,* 735 A.2d at 677 (stating that circumstances which alone would be insufficient may combine to show reasonable suspicion); *Commonwealth v. Cottman,* 764 A.2d 595 (Pa.Super.2000) (finding that the officer's experience, appellant's presence in a high crime area, furtive movements, and flight established reasonable suspicion); *Pizarro,* 723 A.2d at 680 (finding that flight along with presence in heavy drug-trafficking area may demonstrate reasonable suspicion).

¶ 12 In the instant case, the informant gave a detailed description including gender, race, complexion, height, color of jacket, kind and color of sweatshirt, color of hat, kind of pants, and exact location. Such a description could not easily identify one other than the described individual. *See Cook,* 735 A.2d at 678 (explaining that absence of a description can sometimes be fatal to finding reasonable suspicion). However, the informant failed to identify himself. Therefore, the tip alone is insufficient to show reasonable suspicion. *Wimbush,* 750 A.2d at 811.

¶ 13 Our supreme court in *Zhahir* found that even where the source of a tip was unknown, it could be verified through suspicious conduct in a high crime area. *Zhahir,* 751 A.2d at 1157. The court stated that

suspicious conduct in an area associated with criminal activity provided independent corroboration of the essential allegation of the information and, thus, suggested that criminality may have been afoot. *See Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (explaining that an area of expected criminal activity is a relevant contextual consideration, as is nervous or evasive behavior, in determining reasonable suspicion).

*Id.* In the instant case, appellant immediately evidenced his evasive behavior through his unprovoked flight when the officers stepped out of their car. However, the suppression record does not reflect that a high-crime area was involved. Therefore, the present case is factually distinguishable from prior caselaw.

■ ¶ 14 We are faced with the issue of whether flight upon approach by an officer and an anonymous tip containing a detailed description are sufficient to demonstrate reasonable suspicion in the absence of additional factors. Our review of recent and notable reasonable suspicion cases [2] involving anonymous tips or flight

**2.** Reasonable suspicion cases concerning anonymous tips or flight:

| Case | | Presence of tip | Flight or other facts | Reasonable suspicion |
|------|------|-----------------|----------------------|----------------------|
| *In re D.M.*, 743 A.2d 422 (Pa. 1999), *vacated and remanded sub nom.* **Pennsylvania v. D.M.**, 120 S.Ct. 2003 (2000) | | Anonymous tip | Flight | No |
| *Com. v. Matos*, 672 A.2d 769 (Pa. 1996) | Appeal of Matos | Anonymous, non-descriptive tip | Flight | No |
| *Com. v. Matos*, 672 A.2d 769 (Pa. 1996) | Appeal of McFadden | No tip | Flight | No |
| *Com. v. Matos*, 672 A.2d 769 (Pa. 1996) | Appeal of Carroll | No tip | Flight | No |
| *Illinois v. Wardlow*, 528 U.S. 119 (2000) | | No tip | Flight, high crime area | Yes |
| *Com. v. Cottman*, 764 A.2d 595 (Pa. Super. 2000) | | No tip | Flight, high crime area, other suspicious conduct | Yes |
| *Com. v. Johnson*, 734 A.2d 864 (Pa. Super.), *appeal denied*, 745 A.2d 1219 (Pa. 1999) | | No tip | Flight, high crime area, other suspicious conduct | Yes |
| *Com. v. Spears*, 743 A.2d 512 (Pa. Super. 1999) | | No tip | Flight, high crime area, other suspicious conduct | Yes |
| *Com. v. Pizzaro*, 723 A.2d 675 (Pa. Super. 1998) | | No tip | Flight, high crime area, other suspicious conduct | Yes |
| *Com. v. Riley*, 715 A.2d 1131 (Pa. Super. 1998), *appeal denied*, 737 A.2d 741 (Pa. 1999) | | No tip | Flight, high crime area, other suspicious conduct | Yes |
| *Com. v. Cook*, 735 A.2d 673 (Pa. 1999) | | No tip | Flight, other suspicious conduct | Yes |
| *Com. v. DeWitt*, 608 A.2d 1030 (Pa. 1992) | | No tip | Flight, prior report of crime, furtive movements | No |
| *Com. v. Wimbush*, 750 A.2d 807 (Pa. 2000) | Appeal of Wimbush | Anonymous tip | No flight | No |
| *Com v. Hawkins*, 692 A.2d 1068 (Pa. 1997) | | Anonymous tip | No flight | No |
| *Com v. Jackson*, 698 A.2d 571 (Pa. 1997) | | Anonymous tip | No flight | No |
| *Com. v. Kue*, 692 A.2d 1076 (Pa. 1997) | | Anonymous tip | No flight | No |
| *Com. v. Hayward*, 756 A.2d 23 (Pa. Super. 2000) | | Anonymous tip | No flight | No |
| *Com. v. Martin*, 705 A.2d 887 (Pa. Super. 1998) | | Anonymous tip | No flight | No |
| *Florida v. J.L.*, 529 U.S. 266 (2000) | | Anonymous tip | No flight | No |
| *Com. v. Zhahir*, 751 A.2d 1153 (Pa. 2000) | | Anonymous tip | No flight but retreat, high crime area, other suspicious conduct | Yes |
| *Com. v. Wimbush*, 750 A.2d 807 (Pa. 2000) | Appeal of White | Anonymous tip | No flight initially | No |
| *Com. v. Albert*, 2001 PA Super 3 | | Anonymous tip | No flight initially | No |
| *Com. v. McDonald*, 740 A.2d 267 (Pa. Super. 1999), *appeal denied*, 757 A.2d 930 (Pa. 2000) | | Anonymous tip | No flight, high crime area, imminent danger (shots fired) | Yes |

reveals few cases with similar fact patterns. Our supreme court in *Matos* assumed the absence of reasonable suspicion, without explanation, where an anonymous tip and flight were the only factors. *Matos*, 672 A.2d at 770–71. Nevertheless, the tip in *Matos* did not describe an individual but merely stated that criminality was afoot in a certain area. *Id.*

¶ 15 The case that was closest on point to the present facts was vacated and remanded by the United States Supreme Court. *In re D.M.*, 560 Pa. 166, 743 A.2d 422 (1999), *vacated and remanded sub nom. Pennsylvania v. D.M.*, 529 U.S. 1126, 120 S.Ct. 2003, 146 L.Ed.2d 953 (2000). In that case, the Pennsylvania Supreme Court declined to find reasonable suspicion in spite of an anonymous tip describing "a black male, wearing a white t-shirt, blue jeans and white sneakers" who fled when beckoned by an officer. *Id.* at 424–26. The court stated that flight only creates reasonable suspicion where there is already some suspicion. *Id.* at 426. Even the combination of a detailed description and flight were not adequate to show reasonable suspicion. *Id.* At the same time, the court emphasized that the reasonable suspicion analysis is identical under both Article I, § 8 and the Fourth Amendment. *Id.* at 425.

¶ 16 The United States Supreme Court vacated and remanded *In re D.M.* on the basis of its decision in *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). *Pennsylvania v. D.M.*, 529 U.S. at 1126, 120 S.Ct. at 2003. In *Wardlow*, the United States Supreme Court found reasonable suspicion when an individual in a high crime area fled, unprovoked, from the police. *Wardlow*, 528 U.S. at 124–25, 120 S.Ct. 673. Reasonable suspicion was established even though the individual did nothing suspicious before he fled. *Id.* at 121–22, 120 S.Ct. 673.[3]

¶ 17 *Wardlow* notwithstanding, we are cognizant of *In re D.M.*'s reasoning, which explains that "subsequent flight becomes a relevant factor, in determining reasonable suspicion, only when the officer's suspicions are already aroused." *In re D.M.*, 743 A.2d at 426. We refrain from speculating as to whether Pennsylvania courts will continue to adhere to this reasoning. However, since our supreme court has not yet issued an opinion on remand in *In re D.M.*, we decline to find reasonable suspicion where there are no factors in addition to an anonymous tip and flight.

¶ 18 While we find that the officers lacked reasonable suspicion when they gave chase, appellant's subsequent assault when the gun was displayed established probable cause for appellant's arrest and for the admission of the abandoned firearm. Appellant, on the other hand, argues that if the chase began improperly, all evidence subsequently discovered is tainted with illegality. Therefore, he argues, evidence of the abandoned gun must be suppressed.

¶ 19 An officer may make an arrest in the absence of a warrant if he has probable cause. *Commonwealth v. Clark*,

We realize that presentation of authorities by chart is unusual and perhaps unprecedented in this Commonwealth. However, since this chart was developed during the course of our research on this case, we see no reason why it should not be included in our disposition.

3. The Court explained that "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.... [T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 124–25, 120 S.Ct. 673.

558 Pa. 157, 735 A.2d 1248, 1251 (1999). Probable cause exists where

> "the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." In determining whether probable cause existed in a particular situation, "a court will not look just at one or two individual factors, but will consider the 'totality of the circumstances' as they appeared to the arresting officer."

*Commonwealth v. Stewart,* 740 A.2d 712, 718 (Pa.Super.1999) (quoting *Commonwealth v. Dennis,* 417 Pa.Super. 425, 612 A.2d 1014, 1015–16 (1992)). Reasonable suspicion prior to a chase or probable cause for arrest is needed before items abandoned during flight can be admitted as evidence. *Wimbush,* 750 A.2d at 810 n. 5; *Matos,* 672 A.2d at 771. Thus, the question at hand is whether a crime subsequent to a constitutionally infirm chase can give rise to probable cause for an arrest and for the admission of evidence.

¶ 20 Our decision in *Commonwealth v. Britt,* 456 Pa.Super. 633, 691 A.2d 494 (1997), is instructive with respect to this issue. In *Britt,* the police received information concerning a potential drug sale. Based on the tip, the police located the defendant's parked vehicle. The police approached the vehicle with their guns drawn and identified themselves. In response, the defendant recklessly exited his parking space at a high rate of speed and hit one of the officers with a side mirror. The defendant was subsequently arrested and found to be in the possession of narcotics. The defendant moved to suppress all evidence on the basis that the officers' approach and arrest lacked probable cause. *Britt,* 691 A.2d at 494–95.

¶ 21 The appellant in the instant case, as in *Britt,* suggests that we should "focus upon the initial actions of the police officers as a catalyst for all that flowed therefrom" and suppress all evidence subsequently obtained. *Id.* at 497 (quoting *Commonwealth v. Biagini,* 540 Pa. 22, 655 A.2d 492, 498 (1995)). However, we went on to state that "[a]lthough the record supports the suppression court's conclusion that the officers did not have probable cause...appellee had no lawful reason to flee the officers in such a violent, reckless manner, whereby he evinced a blatant disregard for the officers' safety." *Britt,* 691 A.2d at 498. We found the officers had probable cause for an arrest on the basis of the subsequent assault and reckless endangerment and held that all evidence obtained pursuant to that arrest was lawfully seized. *Id.*

¶ 22 Instantly, as in *Britt,* the officers approached appellant who fled. During flight, appellant assaulted an officer, in this case by turning toward the officer with a gun in hand. If, as the officer testified, he saw appellant point a gun in his direction, "the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." *Stewart,* 740 A.2d at 718. Therefore, as in *Britt,* we find that the subsequent assault established probable cause for the eventual arrest. *Britt,* 691 A.2d at 498.[4] Since appellant abandoned the weapon after the

---

4. In addition to the clear message in *Britt,* common sense leads us to the conclusion that a crime witnessed by an officer subsequent to an improper stop must give rise to probable cause for arrest and for the admission of evidence. Otherwise, persons would have complete immunity to break any law in the wake of a mistake on the part of the police. Even though the officer was not injured in this instance, other subsequent crimes may be more tragic.

assault, the officers had probable cause at the point of the abandonment for an arrest. Therefore, evidence of the abandoned weapon would have been properly admitted even if we had not found reasonable suspicion for the initial chase.

¶ 23 Judgment of sentence affirmed.

¶ 24 McEWEN, President Judge, concurs in the result.