**Commonwealth v. Stark**

C.P. of Armstrong County, no. CP-03-CR-0000649-2004.

*Frederick L. John II,* for Commonwealth.
*Edward J. Bilik,* for defendant.

VALASEK, *J.,* March 10, 2005—Before the court for disposition is defendant's omnibus pretrial motion in the nature of a motion to suppress evidence. Defendant is charged with possession of a controlled substance under 35 P.S. §780-13(a)(16) and possession with intent to use drug paraphernalia under 35 P.S. §780-13(a)(32). Upon request of both defense counsel and the district attorney, it was ordered that this motion be decided by the court on the basis of the transcript of the preliminary hearing. Both parties have submitted briefs.

## FACTS

On June 12, 2004, at 12:16 a.m., Police Officers Ryan Arbaugh and Craig Luffey drove into the public parking lot behind Miller's Hoagies on Ninth Street in Ford City Borough. After entering the lot, the officers observed defendant and Nathan Nagy sitting inside a parked car. Officer Luffey approached on the passenger side of the parked vehicle as Officer Arbaugh followed behind, approaching on the driver side. After Officer Luffey informed Officer Arbaugh that there appeared to be some movement in the vehicle, Officer Luffey opened the

passenger door and observed a white powdery substance on the floor mat. By this point, Officer Arbaugh had made his way to the driver side door and observed defendant-driver move his arm in the general direction of his lap. As Officer Luffey was speaking to Mr. Nagy, Officer Arbaugh opened the driver side door and confronted defendant. When Officer Arbaugh opened the door, a canister fell from between defendant's legs to the floor. Defendant responded "Look" when the officer asked what had fallen. Officer Arbaugh reached down and confiscated a clear plastic film canister containing a baggie of cocaine. Defendant was then told to exit the vehicle. After being patted down for weapons, defendant was placed under arrest and transported to the Ford City Borough police station where he was *Mirandized* at 12:44 a.m. The defendant signed a waiver and gave a voluntary written statement. In addition to the canister and baggie of cocaine, the officers also confiscated the floor mat from the passenger side of the vehicle.

## ISSUE

Whether the evidence seized by the officers from defendant's vehicle was the product of an unlawful detention, arrest, search and seizure.

## STANDARD OF REVIEW

The Commonwealth shall have the burden of going forward with evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights. Pa.R.Crim.P. 581(H).

## DISCUSSION

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Schneckloth v. Bustamonte,* 412 U.S. 218, 236, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Blair,* 394 Pa. Super. 207, 214, 575 A.2d 593, 596 (1990).

However, not every encounter between a citizen and the police is so intrusive as to trigger the protections provided by the Fourth Amendment to the United States Constitution. See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Douglass,* 372 Pa. Super. 227, 238, 539 A.2d 412, 417 (1988).

In this case, the Commonwealth asserts that the officers stopped and briefly detained defendant based on reasonable suspicion that criminal activity was afoot.

The officers were patrolling an area known for drug activity when they observed defendant's parked vehicle in the public parking lot.

"The police are permitted to stop and briefly detain citizens whenever they have a reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot." *Commonwealth v. Allen,* 555 Pa. 522, 527, 725 A.2d 737, 740 (1999). See also, *Terry v. Ohio,* 392 U.S. 1, 21, 30, 88 S.Ct. 1868, 1880, 1884, 20 L.Ed.2d 889 (1968); *Commonwealth v. Melendez,* 544 Pa. 323, 328, 676 A.2d 226, 228 (1996); *Commonwealth v. Hicks,* 434 Pa. 153, 160, 253 A.2d 276, 280 (1969).

"There are three types of interactions between police and the citizenry." *Commonwealth v. Stevenson,* 832 A.2d 1123, 1127 (Pa. Super. 2003). See also, *Commonwealth v. DeHart,* 745 A.2d 633, 636 (Pa. Super. 2000).

Interaction between citizens and police officers are classified as a "mere encounter," an "investigative detention," or a "custodial detention." Each requires a different level of justification depending upon the nature of the interaction and whether or not the citizen is detained.

"A *'mere encounter'* can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond." *Stevenson,* 832 A.2d at 1127. (emphasis added)

"[A]n *'investigative detention,'* by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest." *Stevenson* at 1127. (emphasis added) This interaction has elements of official compulsion and therefore it requires "reasonable suspicion" of unlawful activity.

"[A] *custodial detention* occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." *Id.* (emphasis added)

In the present case, the parking lot in which defendant had his vehicle parked was used during daylight hours for a doctor's office. However, Officer Arbaugh acknowl-

edged that after hours, the lot was used for parking for the bar across the street.

For this reason, when the officers spotted defendant, he was parked legally in a place that he had a right to be. Approaching the defendant at this point rises only to the level of a "mere encounter" whereby police could approach and inquire of defendant his intentions without reasonable suspicion.

Because it was a mere encounter, defendant was not obligated to stay or respond. However, rather than proceed with an inquiry, the court finds that the officers elevated the encounter to an "investigative detention" when they opened the car doors and blocked defendant and his passenger inside the vehicle.

The Pennsylvania Supreme Court has held, "There is no clear formula for determining whether an interaction constitutes a mere encounter or an investigative detention, but we are guided by the question of whether a reasonable person, based on the totality of the circumstances, would believe he is free to leave." *Commonwealth v. Bennett,* 827 A.2d 469, 478 (Pa. Super. 2003). See also, *Commonwealth v. Reid,* 571 Pa. 1, 27, 811 A.2d 530, 545 (2002).

In evaluating the totality of the circumstances, the court takes into consideration whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. See *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980).

Other factors to consider when making this determination include "the nature, length and location of the

detention; whether the suspect was transported against his or her will, how far and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions." *Bennett,* 827 A.2d at 478.

The court finds the interaction between the officers and defendant constituted an investigative detention based on the fact that the officers opened the vehicle doors and blocked defendant inside. Defendant could not have reasonably believed he was free to leave. Because defendant was not free to leave at this point, what may have started out as a mere encounter then became an investigative stop.

Since this interaction was an investigative detention, the officers were required to have reasonable suspicion for such a stop. The court finds there was no reasonable suspicion because the officers saw only a legally parked car in a public lot with two passengers moving inside. Just because passengers are sitting in a parked vehicle does not in and of itself induce a reasonable suspicion that they are engaged in criminal activity. Without reasonable suspicion, the defendant was under no official compulsion to stay and talk with the officers. However, the defendant did not have the choice of whether he wanted to comply with the officers' inquiries because the officers opened the car doors and physically blocked the defendant and his passenger inside the vehicle.

The officers claim that they had reasonable suspicion to validate the detention based on the area's reputation for drug trafficking and movement inside the vehicle.

"The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a *'particularized and objective basis'* for suspecting the individual stopped." *Commonwealth v. Reppert,* 814 A.2d 1196, 1203-1204 (Pa. Super. 2002). (emphasis in original) "Thus, to establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Reppert,* 814 A.2d at 1204. See also, *Commonwealth v. Cook,* 558 Pa. 50, 57, 735 A.2d 673, 677 (1999).

"Although a police officer's knowledge and length of experience weigh heavily in determining whether reasonable suspicion existed, our courts remain mindful that the officer's judgment is necessarily colored by his or her primary involvement in 'the often competitive enterprise of ferreting out crime.' " *Reppert* at 1204. See also, *In re D.E.M.,* 727 A.2d 570, 578 n.19 (Pa. Super. 1999) (quoting *Terry,* 392 U.S. at 11-12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

"Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely whether 'the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate.' " *Id.* (citing *Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153, 1156 (2000)).

*"This inquiry will not be satisfied by an officer's hunch or unparticularized suspicion."* Id. (emphasis in original) See *Commonwealth v. Arch,* 439 Pa. Super. 606, 612, 654 A.2d 1141, 1144 (1995).

Here, the officers were patrolling the streets in their police cruiser when they observed defendant's parked vehicle. The vehicle was legally parked in a public parking lot. Although the area had a reputation for drug trafficking, a parked car in a public parking lot with passengers moving inside does not reasonably lead one to conclude that criminal activity is necessarily afoot.

Factors to be considered in forming a basis for reasonable suspicion include tips, informant reliability, time, location, and suspicious activity, including flight. See *Commonwealth v. Lynch,* 773 A.2d 1240, 1244 (Pa. Super. 2001). See also, *Commonwealth v. Freeman,* 563 Pa. 82, 90, 757 A.2d 903, 908 (2000) (finding "nervous, evasive behavior such as flight is a pertinent factor in determining reasonable suspicion"); *Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153 (2000) (stating that the expectation of criminal activity in a given area and nervous or evasive behavior are factors to consider); *Commonwealth v. Pizarro,* 723 A.2d 675, 680 (Pa. Super. 1998) (finding that flight and presence in heavy drug-trafficking areas are factors).

However, "presence in a high crime area alone or flight alone does not form the basis for reasonable suspicion." *Lynch,* 773 A.2d at 1244. See also, *Commonwealth v. Cook,* 558 Pa. 50, 58, 735 A.2d 673, 677 (1999). But, a combination of these factors may be sufficient. *Lynch* at 1244. See also, *Zhahir,* 561 Pa. at 553, 751 A.2d at 1157 (noting that suspicious conduct corroborates an anony-

mous tip); *Cook,* 558 Pa. at 58-59, 735 A.2d at 677 (stating that circumstances which alone would be insufficient may combine to show reasonable suspicion); *Commonwealth v. Cottman,* 764 A.2d 595 (Pa. Super. 2000) (finding that the officer's experience, appellant's presence in a high crime area, furtive movements, and flight established reasonable suspicion); *Pizarro,* 723 A.2d at 680 (finding that flight along with presence in heavy drug-trafficking area may demonstrate reasonable suspicion).

In the present case, the officers opened the doors because they saw movement inside a vehicle that was legally parked in an area known for drug trafficking. Officer Luffey saw a white powdery substance only *after* he had already opened the passenger door. (Tr. at p. 15.) Officer Arbaugh opened the driver door because he saw defendant move his hands in the general direction of his lap. (Tr. at pp. 26-27.) Neither officer saw any weapons or contraband, or anything that could resemble such, nor did the defendant exhibit nervous behavior or attempt to flee. The officers' only basis for reasonable suspicion to open the doors and detain defendant was based on the fact that passengers were moving inside the vehicle. This is simply not enough to reasonably lead one to conclude that criminal activity is afoot.

Therefore, the court finds that the officers conducted an investigative stop without reasonable suspicion, and the evidence seized as a result shall be suppressed.

## ORDER

And now, March 10, 2005, defendant having filed an omnibus pretrial motion in the nature of a motion to suppress, for the reasons set forth in the foregoing opinion,

it is ordered, adjudged and decreed that defendant's motion to suppress be granted, and all evidence obtained after the opening of the defendant's passenger-side door is hereby suppressed for use at trial.