513 A.2d 445

**COMMONWEALTH of Pennsylvania**

v.

**Vincent EDWARDS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 17, 1986.

Filed July 28, 1986.

312

John Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before BROSKY, JOHNSON and LIPEZ, JJ.

BROSKY, Judge:

This appeal is from the judgment of sentence imposed after appellant was found guilty in a bench trial of unauthorized use of an automobile. Appellant's sole contention is that the stop of the automobile he was driving was improper and, thus, that the trial court erred in refusing to suppress evidence seized as a result of that stop. We agree with appellant, and, accordingly, vacate the judgment of sentence and remand this case for a new trial.

Appellant was arrested on February 5, 1985 and charged with theft, receiving stolen property and unauthorized use of an automobile. Prior to trial, appellant litigated a motion to suppress physical evidence on the ground that it was fruit of an illegal stop. The trial court denied the motion on May 2, 1985 and the case proceeded immediately to a bench trial. The trial judge found appellant guilty only of the charge of unauthorized use of an automobile. Appellant timely filed post-verdict motions which were denied by the court below. On July 30, 1985, appellant was sentenced to twelve months probation. This appeal timely followed.

Appellant contends that the trial court erred in denying his suppression motion.

In reviewing this ruling our initial task is to determine whether the factual findings are supported by the record. "In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much evidence of the prosecution's witnesses and so much evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Goodwin*, 460 Pa. 516, 522, 333 A.2d 892, 895 (1975). If, when so viewed, the evidence supports the factual findings we are bound by such findings; we may only reverse if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Johnson*, 467 Pa. 146, 151–52, 354 A.2d 886, 889 (1976) (footnote omitted).

Viewed in that light, the record reveals the following: On February 5, 1985, at 2:30 a.m., Philadelphia Police Officer William Humes observed appellant driving a 1984 Toyota Celica. The officer observed that the metal and plastic surrounding the car's headlights were twisted up and that there was a large scrape on the driver's side which extended from the front fender to the rear fender.

Because the car was new and the damage appeared to be fresh, the officer stopped the vehicle pursuant to a policy of the Philadelphia Police Department to stop cars with such damage to determine whether an accident report, if necessary, was filed. Appellant was unable to produce a driver's license and registration when asked to do so by Officer Humes. The officer then had a computer check run on the vehicle and was informed that the car was owned by Hertz Rent-a-Car Company. Although appellant had told Officer Humes that the car was a rental, he could not produce any documents showing that he had rented the vehicle. The officer then placed appellant under arrest and impounded the car. When Hertz was later contacted by the officer, it informed him that the automobile had not been rented, but had been removed from the Hertz garage at the Philadelphia International Airport.

Appellant contends that the suppression court erred in concluding that, under the foregoing facts, appellant's Fourth Amendment rights were not violated by the stop of the automobile. The court below concluded that Officer Humes had a reasonable suspicion that appellant had violated the Motor Vehicle Code [1] and, therefore, that an investigatory stop was justified under the Fourth Amendment. Appellant argues that as a matter of law, the facts available to the officer could not support a reasonable suspicion that appellant had violated the Motor Vehicle Code. We must agree with appellant.

An individual has a reasonable expectation of privacy in an automobile and when a vehicle is stopped by a police officer, a seizure within the meaning of the Fourth Amendment has occurred. *Commonwealth v. Tarbert*, 348 Pa.Super. 306, 502 A.2d 221 (1985).

> [E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, *or that either the vehicle or an occupant is otherwise subject to seizure for violation of law,* stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Id.,* 348 Pa.Superior Ct. at 312, 502 A.2d at 224 (emphasis added), quoting *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979); see also, *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973).

Thus, "police may stop an automobile if they reasonably suspect a possible violation of the Vehicle Code . . ." *Commonwealth v. Burrell,* 286 Pa.Super. 502, 429 A.2d 434 (1981) (citations omitted).[2] A court may not conclude that a police officer had a *reasonable* suspicion of unlawful activi-

1. 75 Pa.C.S. §§ 101–9901.

2. The Motor Vehicle Code in Section 6308(b), specifically authorizes a police officer to stop a vehicle when he has "articulable and reasonable grounds to suspect a violation" of Title 75.

ty unless the officer relied on specific and articulable facts which together with the rational inferences from those facts, reasonably warranted the intrusion. *Commonwealth v. Mayo*, 344 Pa.Super. 336, 496 A.2d 824 (1985).

In the instant case, Officer Humes stopped the car solely on the basis of the damage to it he had observed. He suspected from the fresh damage that the car might have been in a type of accident required by the Motor Vehicle Code to be reported [3] and that it was possible that appellant had failed to report such an accident.

We agree with appellant that the officer's suspicion cannot be considered a reasonable one within the meaning of *Mayo*, supra. The conclusion that appellant violated the Motor Vehicle Code only follows from the articulated fact of the fresh damage to the car *if* the damage to the car was caused of a type required by the Motor Vehicle Code to be reported and *if* appellant did not report the accident.

While §§ 3744–3746 do require many types of vehicular accidents to be reported to the police, there are certainly a

**3.** Circumstances in which vehicular accidents must be reported to the police are enumerated in 75 Pa.C.S. §§ 3744–3746.

Section 3744 provides that the driver of any vehicle involved in an accident resulting in injury or death to any person or damage to any vehicle or other property which is driven or attended must give his name, address, vehicle registration number, and other information to any person injured in the accident or to the driver or occupant of any vehicle or property damaged in the accident. The driver must give the same information to any police officer who is present at the scene of the accident or who is investigating the accident. In the event that no police officer is present at the accident scene and none of the persons entitled to the information are in condition to receive it, the driver must report the accident to the police department and provide the police with the above-mentioned information. Section 3745(a) requires that the driver of a vehicle which collides with and causes damage to an unattended vehicle or other property must either: (1) immediately locate and notify the owner; or (2) attach written notice to the vehicle or property giving the driver's name, address, etc. and notify the police. Section 3746(a) requires that the driver of a vehicle involved in an accident must immediately notify the police if the accident results in either: (1) injury or death to any person; or (2) damage to any vehicle to the extent that it cannot be driven under its own power "without further damage or hazard to the vehicle, other traffic elements, or the roadway, and therefore requires towing."

myriad of ways an automobile could sustain even severe body damage which would not require notification of the police. Owners can damage their cars in their driveways or garages or their cars can be struck while parked in lots or on the street. In such cases and, indeed, in any case of an accident which does not involve damage to another's vehicle or property or injury or death, §§ 3744–3746 create no duty to report the accident to the police. Thus, vehicle stops based solely on the presence of fresh damage to the cars would include such a number of presumably innocent persons as to approach the type of subjectively administered, random basis for stopping vehicles and interrogating drivers that is prohibited by the Fourth Amendment.

Even assuming that a reasonably sufficient number of cars with fresh damages will have been in accidents requiring notification of the police, motorists involved in such accidents do not violate the Motor Vehicle Code unless they fail to report such accidents. While it logically follows that a driver has to have been in an accident in order to have not reported it, we hardly believe that the mere occurrence of an accident supports a reasonable suspicion that the driver failed to report the accident.

Thus, given the at best tenuous relationship between the presence of fresh damage to a car and a conclusion that an accident required to be reported has occurred and the near absence of any relationship between such damage and a conclusion that the driver did not report an accident required to be reported, we hold that the damage to the car driven by appellant did not reasonably warrant the intrusion of an investigatory stop.[4]

---

**4.** The Commonwealth also argues that the police department policy was intended in part to combat an alleged high incidence of drunk drivers leaving accident scenes. Although Officer Humes did make a reference to drunk drivers at the suppression hearing, upon questioning by the court, he stated that the actual purpose of the department policy was to determine whether or not an accident had been reported. In any event, fresh damage above to a car could hardly support a *reasonable* suspicion that the driver was drunk.

The Commonwealth finally contends that the damage to the car provided a reasonable suspicion of hidden damage to its safety and

■ Our conclusion is not affected by the fact that it is the policy of the Philadelphia Police Department to stop cars with fresh damage to them. The police cannot constitutionalize otherwise unconstitutional actions of police officers simply by making such actions department policy.[5]

We conclude, therefore, that the suppression court erred in denying appellant's motion to suppress physical evidence, i.e., the automobile as fruit of an illegal stop. Accordingly, we vacate the judgment of sentence and remand this case for a new trial at which the Commonwealth will not be permitted to introduce the illegally seized evidence.

Jurisdiction relinquished.

JOHNSON, J. concurs in the result.

operability. We note first that Officer Humes did not articulate this possibility at the suppression hearing nor did the Commonwealth present any evidence at the suppression hearing to indicate that the type of damage to the car was likely to cause or have such hidden defects. Without such evidence, this Commonwealth's logic would allow the police to stop every damaged car on the road on the possibility that such cars contain hidden safety defects.

We must thus conclude once again that damage alone to an automobile does not support a reasonable suspicion that the Motor Vehicle Code has been violated.

5. As this Court observed in *Tarbert*, supra, nonarbitrary, systematic programs of checking vehicles or drivers, e.g., roadblocks or weighing stations, in which vehicles are stopped absent any articulable suspicion of wrongdoing have been held to pass federal constitutional muster. See *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Commonwealth v. Nase*, 14 D & C3d 592 (1980); *State v. Kirk*, 202 N.J.Super. 28, 493 A.2d 1271 (1985). We do not find and the Commonwealth has never contended that the police department's "policy" is equivalent to such a systematic program.