J-A27016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYREAKE BROWN | |
| Appellant | No. 3908 EDA 2017 |

Appeal from the Judgment of Sentence imposed November 17, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0012725-2015

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 1, 2019**

Appellant, Tyreake Brown, appeals from the judgment of sentence imposed in the Court of Common Pleas of Philadelphia County on November 17, 2017, following his conviction of possession with intent to deliver ("PWID"), 35 P.S. § 780-113(30).  Appellant argues the trial court erred in denying his motion to suppress because he was improperly detained and because the arresting officers lacked probable cause to conduct a search that led to discovery of heroin in his genital region.  Upon review, including review of the issue Appellant presented in an application for reargument *en banc*, we affirm.[1]

_____

[1] Following initial issuance of a memorandum affirming Appellant's judgment of sentence, Appellant requested reargument *en banc*.  We granted panel

Philadelphia Police Officer William Fritz was the sole witness at Appellant's suppression hearing. The facts of the case, based on his testimony from Appellant's suppression hearing, can be summarized as follows. At approximately 9:00 p.m. on November 27, 2015, two Philadelphia police officers on routine patrol, including Officer Fritz, stopped an SUV in the 1500 block of South 18th Street because it was being operated without headlights. Before stopping the SUV, the officers ran the tag and determined the SUV was a rental.

As the officers approached the vehicle, they detected the odor of burnt marijuana. Appellant was a passenger in the front seat of the SUV. Neither he nor the driver was able to produce identification when requested by the officers. A backseat passenger did have an identification card. Neither his identification nor the verbal identification information provided by Appellant and the driver matched the name on the rental agreement. The officers then ran the names of the occupants and determined that none had a driver's license. Consequently, the officers had the occupants exit the SUV so they

---

reconsideration to assess Appellant's challenge to our determination that he failed to preserve a challenge to an inventory search. As will be discussed herein, the record confirms that Appellant failed to preserve the challenge for appellate review.

"could conduct a safe live stop inventory."[2]  Notes of Testimony ("N.T."), Suppression Hearing, 4/20/17, at 11.

Two additional officers, including Officer Ngo, had arrived at the scene by that time.  One of them frisked the driver while one of the two original officers frisked Appellant and the other frisked the backseat passenger.  The frisks yielded "bricks" of currency totaling $2550 in cash from the driver, $1165 from the backseat passenger, and nothing from Appellant.  *Id.* at 11-13.  As Officer Fritz explained, "We were going to inventory the vehicle [because they were going to live stop it and tow it away], and since there [were] three people, we were going to put them in the back of our vehicle in the meantime.  So we had to frisk them for that reason."  *Id.* at 12-13.  Each occupant was placed in a separate vehicle while the officers began to inventory the SUV and discovered a "brown box of new and unused wax inserts, commonly used for packaging heroin" on the floor of the front passenger-side seat where Appellant was seated.  *Id.* at 14.  The officers also located a scale in the cargo area of the SUV.  *Id.* at 16.

Upon discovering the wax inserts, the officers called for the K-9 unit, rolled up the windows, and waited for the K-9 unit to arrive.  Upon arrival of the unit at 9:45 p.m., the "K-9 hit on both front doors and the rear of the

_____

[2] "The City of Philadelphia's 'Live Stop' program involves the immediate immobilization in place or towing to a different location of vehicles found to be operated in violation of certain state motor vehicle statutes."  Trial Court Rule 1925(a) Opinion, 2/21/18, at 1 n.2.

- 3 -

vehicle." *Id.* at 15. "Once the dog hit, we then started pulling each person out and did a thorough search [] incident to arrest." *Id.* The officer who searched Appellant "recovered a sandwich bag containing two smaller sandwich bags of bulk heroin" from Appellant's "genital region." *Id.* at 16-17. The officers also recovered cellphones from each occupant.

With regard to the search of Appellant, Officer Fritz testified that it was not a strip search and that Appellant's pants were not pulled down during the search. *Id.* at 27. As the officer conducting the search "reached the region of his groin, [Appellant] was clenched tightly with his legs[.]" *Id.* at 28. "[The officer] had to spread [Appellant's] legs, and then he conducted a frisk of the area between his genitals and his ass" and "recovered the sandwich bag containing the two sandwich bags of heroin from that area." *Id.* at 29.

Appellant was charged with PWID and criminal use of a communication facility.[3] Appellant filed an omnibus pre-trial motion on January 21, 2016. After numerous continuances, the Honorable Jeffrey P. Minehart conducted a suppression hearing on April 20, 2017. By order entered the same day, Judge Minehart denied Appellant's motion. Trial did not immediately follow the ruling because Appellant's counsel requested a continuance to secure an expert.

The case proceeded to a bench trial before the Honorable William Mazzola on November 21, 2017. The parties incorporated the transcript of

---

[3] 18 Pa.C.S.A. § 7512.

- 4 -

the suppression hearing and stipulated that the items retrieved from Appellant were heroin and were of a quantity consistent with heroin possessed with intent to deliver. No additional testimony was presented. Judge Mazzola found Appellant guilty of PWID but not guilty of criminal use of a communication facility. Sentencing was deferred until November 17, 2017, at which time Judge Mazzola imposed a sentence of time served to twenty-three months' incarceration followed by four years' probation. He also ordered that Appellant be immediately paroled.

Appellant did not file post-sentence motions but did file a timely appeal from his judgment of sentence. Both Appellant and Judge Mazzola complied with Pa.R.A.P. 1925.[4]

Appellant presents the following two-part issue for our consideration:

Did not the lower court err as a matter of law by denying appellant's motion to suppress physical evidence—namely, bags of heroin seized from appellant's genital region—where police violated appellant's state and federal constitutional rights

a. because appellant was unconstitutionally detained in the back of a police vehicle during an unlawful inventory search of a car in which he was a passenger; and

b. because police lacked probable cause to arrest appellant and/or search his genital region?

Appellant's Brief at 3.

---

[4] In his Rule 1925(a) Opinion, Judge Mazzola provides a more detailed factual summary than that provided above. Rule 1925(a) Opinion, 2/21/18, at 2-4. We find that his factual summary is supported by the record.

In **Commonwealth v. Smith**, 164 A.3d 1255 (Pa. Super. 2017), we reiterated:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.
>
> Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

**Id.** at 1257 (citation and alterations omitted). Because we find Judge Mazzola's factual findings are supported by the record, we are bound by them. Therefore, we must determine if the court properly applied the law to those facts.

Again, Appellant maintains that the officers involved violated his state and federal constitutional rights by detaining him during an unlawful inventory search and by arresting and searching him without probable cause. As our Supreme Court has recognized:

> Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures.

- 6 -

> ***Commonwealth v. Smith***, 575 Pa. 203, 836 A.2d 5, 10 (2003)
> (citation omitted). Jurisprudence arising under both charters has
> led to the development of three categories of interactions between
> citizens and police. ***Id.*** (citations omitted). The first, a "mere
> encounter," does not require any level of suspicion or carry any
> official compulsion to stop or respond. The second, an
> "investigative detention," permits the temporary detention of an
> individual if supported by reasonable suspicion. The third is an
> arrest or custodial detention, which must be supported by
> probable cause. ***Id.*** (citations omitted).

***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014).

Appellant first contends that the trial court erred in denying his motion to suppress because he was wrongly detained during an unlawful inventory search of the vehicle in which he was a passenger. Before considering the merits of this issue, we must determine if it has been preserved for appeal.

In an earlier memorandum issued by this panel, we concluded Appellant had not preserved any issue relating to the inventory search itself. Appellant filed an application for reargument *en banc*, asserting that

> [t]he panel erred in concluding that petitioner waived his
> challenge to the unlawful inventory search of the car in which he
> was a passenger, where the omnibus pre-trial motion raised the
> claim of an unconstitutional warrantless car search, where the
> hearing on the motion to suppress explored the unconstitutionality
> of [the] search, and where the trial court addressed the issue in
> its opinion.

Application for Reargument at 4 (unnecessary capitalization omitted). We find Appellant's assertions unsupported by the record.

In his omnibus pre-trial motion, Appellant asserted his arrest was illegal because he was arrested without probable cause, because he was subjected to a stop and frisk on less than reasonable suspicion, because he was arrested

without a warrant or other legal justification, and because he was searched without a warrant or probable cause. Omnibus Motion, 1/21/16, at I(B)(1)(a-c), (B)(3) and (B)(4).[5] He did not assert a challenge to the inventory search. Nothing suggested that the challenge to the search involved anything other than the search of Appellant's person. Following Section V of the motion, "Permission [was] respectfully requested to submit additional reasons in support of the omnibus motion as shall appear after preparation of the case is complete." *Id.* at 2. Appellant did not submit any additional reasons in support of the motion.[6]

_____

[5] Specifically, Appellant checked various boxes on the omnibus motion form reflecting his contentions that:

      (1)    the defendant's arrest was illegal.
           (a)    he was arrested without probable cause.
           (b)    he was subjected to a stop and frisk on less than reasonable suspicion.
           (c)    he was arrested without a lawfully issued warrant or other legal justification.
      * * *
      (3)    the search was without a warrant.
      (4)    the search was conducted without probable cause.

Omnibus Motion, 1/21/ 16, at 1.

[6] Appellant's counsel suggests the panel's determination that the inventory search was not challenged in the motion "negate[s] the efficacy of the motion" and that the use of the omnibus motion form reflects "a practice that is now jeopardized by the panel's holding." Application for Reargument at 4. However, the right to advance additional reasons in support of the motion, such as a challenge to the inventory search, was preserved in the motion. Appellant simply did not raise any claim relating to the inventory search.

In **Commonwealth v. Freeman**, 128 A.3d 1231 (Pa. Super. 2015), this Court noted:

> Although the burden in suppression matters is on the Commonwealth to establish "that the challenged evidence was not obtained in violation of the defendant's rights," Pa.R.Crim.P. 581(D), that burden is triggered only when the defendant "state[s] specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." **Commonwealth v. McDonald**, 2005 PA Super 285, 881 A.2d 858, 860 (Pa. Super. 2005). Thus, when a defendant's motion to suppress does not assert specifically the grounds for suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion. **McDonald**, 881 A.2d at 860[.]

**Id.** at 1241-42. In **McDonald**, we observed:

> "Bald statements or boilerplate allegations of illegally obtained evidence are insufficient to trigger the Commonwealth's burden of going forward and proving that a search was legal." **Commonwealth v. Bradshaw**, 324 Pa. Super. 249, 471 A.2d 558, 560 (1984). Recently, this Court clarified that the "thrust" of **Bradshaw** is that "when a motion to suppress is not specific in asserting the evidence believed to have been unlawfully obtained *and/or the basis for the unlawfulness,* the defendant cannot complain if the Commonwealth fails to address the legality of the evidence the defendant wishes to contest." **Commonwealth v. Quaid**, 871 A.2d 246, 249 (Pa. Super. 2005) (emphasis supplied). Based upon the above, it is clear that appellant must meet this threshold requirement before the Commonwealth must bear the burden imposed by Pa.R.Crim.P. 581(H) "of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights."

**Id.** at 860-61.

As further indication of Appellant's failure to challenge the inventory search, we note the opening remarks made by Appellant's counsel at the suppression hearing. At that time, counsel explained that she would argue

the officers "did not have reasonable suspicion to detain [Appellant], did not have reasonable suspicion to frisk him, and did not have probable cause to search [Appellant]." N.T., Suppression Hearing, 4/20/17, at 4. Counsel made no reference to any challenge to the inventory search at that time or during her closing arguments. *Id.* at 4; 32-37. Moreover, during her cross-examination of Officer Fritz, she did not challenge the decision to conduct an inventory search. The challenges raised, as projected in counsel's opening remarks, were limited to the claims involving detaining, frisking and searching Appellant. *Id.* at 21-31.

Our review of the suppression hearing transcript reflects that Appellant's bases for suppression were—just as counsel indicated at the beginning of the hearing—limited to claims that the officers "did not have reasonable suspicion to detain [Appellant], did not have reasonable suspicion to frisk him, and did not have probable cause to search [Appellant]." N.T., Suppression Hearing, 4/20/17, at 4. While the Commonwealth clearly has the burden at the suppression hearing to prove challenged evidence was legally obtained, it does not have the burden to refute bases for suppression that have not been raised in the motion to suppress or in the suppression proceedings. *Freeman, supra; McDonald, supra*.

We also note that Appellant did not preserve any issue relating to illegality of the inventory search in his Rule 1925(b) statement. In his statement, Appellant identified three issues for appeal in support of his claim

the trial court erred in denying his motion to suppress, first, that "police lacked any reasonable suspicion or probable cause to detain or arrest appellant, a passenger in a car, or to search his person and genital region[,]" second, that "police lacked any reasonable suspicion or probable cause to stop the car in which appellant was a passenger, or to unreasonably delay the car stop in order to engage in a fishing expedition," and third, that "appellant was unlawfully detained during an improperly conducted 'Live Stop' procedure." Appellant's Rule 1925(b) Statement, 2/2/18 at ¶ 7a-c. Again, the challenges relate to detaining and searching Appellant and to the traffic stop itself.[7] Notably, the trial court's Rule 1925(a) opinion addresses each of these contentions but does not explore the constitutionality of the inventory search itself, either in its summary of the suppression hearing evidence or in its legal analysis of the issues raised in Appellant's Rule 1925(b) statement. Rule 1925(a) Opinion, at 2-11.

Contrary to Appellant's assertion in his Application for Reargument, the constitutionality of the inventory search was not raised in the omnibus motion, was not explored in the hearing on the motion, and was not addressed in the trial court's Rule 1925(a) opinion. Therefore, we conclude Appellant preserved a challenge to his detention following the stop but has not preserved a challenge to the inventory search itself. Our analysis of Appellant's first issue

---

[7] Appellant did not challenge the traffic stop in the course of the suppression hearing and does not raise the issue in his brief filed with this Court.

- 11 -

is limited accordingly. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Officer Fritz testified that he and his partner stopped the SUV because it was being operated at night without headlights. As they approached the vehicle, the officers detected the odor of burnt marijuana before they even reached the SUV and its occupants. It was then determined the vehicle was rented by someone other than the occupants and that none of the occupants possessed a driver's license. Therefore, the officers began the process of impounding the SUV in accordance with the Philadelphia Live Stop program. The occupants were frisked for the protection of all involved.

Again, Appellant does not challenge the stop of the vehicle. Clearly, "[a] police officer may conduct a lawful traffic stop if he or she reasonably believes that a car is in violation of a Motor Vehicle Code equipment provision." **Commonwealth v. Hynes**, 730 A.2d 960, 962 (Pa. Super. 1999). The provisions of 75 Pa.C.S.A. § 4302 require that "[t]he operator of a vehicle upon a highway shall display the lighted head lamps and other lamps and illuminating devices required under this chapter . . . [b]etween sunset and sunrise."

Our Supreme Court has noted that "if there is a legitimate stop for a traffic violation (based on probable cause), additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions." **Commonwealth v. Chase**,

960 A.2d 108, 115 n. 5 (Pa. 2008) (citation omitted). Further, as that Court recognized in **In Interest of A.A.**, 195 A.3d 896 (Pa. 2018), "the odor of marijuana alone, particularly in a moving vehicle, is sufficient to support at least reasonable suspicion, if not the more stringent requirement of probable cause" that an individual is involved in criminal activity. **Id.** at 904.

Here, there was a legitimate stop. Additional suspicions based on the odor of marijuana were raised even before it was discovered the SUV was rented by someone other than the occupants and that none of the occupants possessed a driver's license. As the trial court explained, "The failure to use headlights justified the initial detention and the immediate detection of the use of marijuana justified further investigation which entitled the officers to have the occupants exit the vehicle and undergo a pat down for the safety of all concerned while they searched it." Trial Court Rule 1925(a) Opinion, 2/21/18, at 5.

Under the circumstances, we conclude there was reasonable suspicion permitting the officers' temporary detention of Appellant and his cohorts. Further, we find the duration of the detention was reasonable under the circumstances.

Regarding the duration, Appellant contends he was detained in the back of a police car for forty-five minutes. The record reflects otherwise. Here, the initial stop occurred at 9:01 p.m. The officers stopped their patrol car, approached the SUV (detecting the odor of burnt marijuana in the course of

- 13 -

doing so), requested a driver's license from the operator, requested identification from the operator and the passengers, ran the names provided through the DMV for licensing information, obtained the rental agreement for the SUV, removed each of the occupants from the vehicle, frisked each occupant in light of the impending Live Stop, and initiated the inventory search, which resulted in locating a box of wax inserts used for packaging heroin. Upon finding the inserts, the officers called for the K-9 unit, shut the doors, rolled up the windows, and waited for K-9 to arrive. The K-9 unit arrived at 9:45, forty-four minutes after the initial stop. Therefore, we reject Appellant's assertion that he was unlawfully detained for forty-five minutes in the back of a patrol car. Based on the testimony, we cannot say that the amount of time from the initial stop until arrival of the K-9 unit was unreasonable in duration.

We find no violation of Appellant's constitutional rights in relation to being detained or in relation to the duration of the detention. Again, an investigative detention permits detention of an individual if supported by reasonable suspicion. Based on the suppression hearing testimony, we find that reasonable suspicion existed. Therefore, Appellant's first claim fails for lack of merit.

Appellant next argues his constitutional rights were violated because the police lacked probable cause to arrest him and/or search his genital region. He contends that the arrest and search were based on the wax inserts

recovered from the SUV and that Appellant was not in constructive possession of the inserts. He suggests that the officers' arrest of all three occupants indicates they did not suspect any one of them of committing a crime but rather they were determined to arrest all three for the same crime. Appellant's Brief at 24-25.

In **Commonwealth v. Evans**, 685 A.2d 535 (Pa. 1996), our Supreme Court addressed the probable cause required to support a warrantless arrest. The Court stated:

> To be constitutionally valid, a warrantless arrest must, of course, be supported by probable cause. **Commonwealth v. Barnette**, 484 Pa. 211, 398 A.2d 1019 (1979). It is well-settled that in considering whether probable cause exists to justify a warrantless arrest, the totality of the circumstances must be considered. **Commonwealth v. Banks**, 540 Pa. 453, 658 A.2d 752 (1995), **citing Illinois v. Gates**, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As this court has held, "probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." **Commonwealth v. Gibson**, 536 Pa. 123, 130, 638 A.2d 203, 206 (1994). As we quoted several years ago, probable cause must be "viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." **Commonwealth v. Norwood**, 456 Pa. 330, 334, 319 A.2d 908, 910 (1974) (citation omitted).
>
> Our case law makes clear, as well, that mere suspicion alone will not support a finding of probable cause. **Commonwealth v. Kelly**, 487 Pa. 174, 409 A.2d 21 (1979) (mere sight of a small amber-colored prescription vial on the seat of an automobile, without more, does not suffice to establish the requisite probable cause for arrest). However, it is also true that, to establish probable cause to arrest, criminal activity need not be shown to, in fact, exist, but rather only that it may be reasonably inferred from the circumstances. **Commonwealth v. Weidenmoyer**, 518 Pa. 2, 13, 539 A.2d 1291, 1297 (1988).

- 15 -

*Id.* at 537 (footnote omitted).

The Commonwealth suggests the officers acquired probable cause for an arrest in the course of their investigation. First, there was the odor of marijuana emanating from the SUV. Appellant was sitting in the front passenger seat and a box of wax inserts—commonly used in packaging heroin—was located on the floor in front at that seat. Appellant's cohorts were carrying large sums of cash. A canine officer "hit" on the front doors of the SUV, including the front passenger door where Appellant was seated. A scale was found in the cargo area of the SUV. Under the totality of the circumstances, the officers could reasonably infer criminal activity, and there was probable cause to believe Appellant possessed the drug paraphernalia located on the front passenger-seat floor. Commonwealth's Brief, at 24. As the suppression court recognized, the officers properly conducted a live stop and a frisk of the occupants of a vehicle that was being operated without headlights and that emanated the odor of marijuana. After finding substantial amounts of money on two occupants and the wax inserts on the front passenger-seat floor, the officers called the K-9 unit. The K-9 unit hit on the front doors and the rear of the SUV. As Judge Minehart concluded:

> At this point, [the officers] had reason to detain the defendants and arrest them. They did the full search, and [Appellant] was found to have two . . . bags of heroin in his groin area. Based on all the evidence as I heard it, the motion to suppress is denied.

N.T., Suppression Hearing, 4/20/17, at 39-40.

As the trial court explained in its Rule 1925(a) opinion,

> The odor of marijuana reasonably led to the discovery of the money and drug packaging which reasonably led to the discovery of the scale and justified the dog sniff which reasonably led to the discovery of heroin on [Appellant's] person. Each step in the process provided the police with a reasonable belief that crimes were being or had been committed and to finally conclude they had enough probable cause to justify arrests which in turn justified more intensive searches, by a K-9 unit and themselves. . . . In this case every step of the officers' investigation was justified.

Trial Court Rule 1925(a) Opinion, 2/21/18, at 10-11. We agree there was probable cause to arrest Appellant and search him incident to that arrest.

Regarding the search itself, in **Commonwealth v. Taylor**, 771 A.2d 1261, 1271 (Pa. 2001), our Supreme Court explained that the scope of a proper search incident to arrest extends to the arrestee's person and those things within the arrestee's immediate control. Here, the search was limited to Appellant's person and yielded heroin and a cellphone.

As reflected above, after the K-9 hit on the doors and rear of the SUV, the officers placed Appellant and his cohorts under arrest and searched them incident to the arrest for paraphernalia. While Appellant suggests that the officers strip-searched him, **see** Appellant's Brief at 8 ("Appellant was consequently strip searched" and "the invasive strip search of [A]ppellant was conducted incident to arrest"), that statement is refuted by Officer Fritz's testimony in the following exchanges:

Appellant's Counsel: And at this point, it was a strip search, right?

Officer Fritz: No.

N.T., 4/20/17, at 27.  Further:

> Appellant's Counsel:  Now, Officer Fritz, this was a strip search, right?
>
> Officer Fritz:  No.  I answered your question.
>
> Appellant's Counsel:  Okay.  So, his pants were not pulled down?
>
> Officer Fritz:  Not during the search, no.

*Id.*  Officer Fritz did not conduct the search but witnessed the search, which was performed by Officer Ngo.  *Id.* at 37-38.

Officer Fritz explained that the usual search of a person goes from head to toe.  In this case, when Officer Ngo "reached the region of [Appellant's] groin, [Appellant] was clenched tightly with his legs, his legs were tight."  N.T., Suppression Hearing, 4/20/17, at 28.  It was apparent to Officer Fritz that Appellant had "something between his legs."  *Id.* at 29.  As a result Officer Ngo "had to spread [Appellant's] legs, and then he conducted a frisk" of the area, leading to the recovery of bulk heroin.  *Id.*

> Our United States Supreme Court has explained:
>
> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  Balancing the need for a particular search in the instant case, we cannot find that the scope of the

intrusion, the manner in which the search was conducted, the justification for initiating it, or the place where it was conducted, constitutes an unconstitutional invasion of personal rights. Appellant's second claim does not provide any basis for relief.

We find no error in the trial court's legal conclusions with regard Appellant's detention and arrest. Although the trial court did not separately address the issue of the actual search in its Rule 1925(a) opinion, we find no violation of Appellant's constitutional rights in the conduct of the search.[8] Finding no error in the denial of Appellant's suppression motion, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/19

---

[8] "It is well-settled that an appellate court may affirm the decision of the trial court if there is any basis on the record to support the trial court's action." *See Commonwealth v. Harper*, 611 A.2d 1211, 1213 n.1 (Pa. Super. 1992).